
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39191-4-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 39192-2-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JAMES S. OLSON, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — James Olson appeals from orders revoking his drug offender sentencing alternative (DOSA), and imposing a standard range term of confinement. We affirm.

FACTS

Mr. Olson pleaded guilty to one count of felony violation of a domestic violence protection order in 2021.[1] The protected party was a woman identified by the initials M.P. At sentencing, the court imposed a residential DOSA. The State did not object. The DOSA specified Mr. Olson was to be released from custody to inpatient treatment on October 18, 2021.

---

[1] The original charges also included first degree burglary and obstruction of a law enforcement officer. Those charges were later dismissed.

Mr. Olson apparently was released as expected and complied with inpatient treatment. But on January 25, 2022, he was arrested and charged with a new protection order violation based on contact with M.P. The State filed a new felony charge but did seek to revoke Mr. Olson's DOSA.

Mr. Olson entered a guilty plea to the new protection order violation. At sentencing, he asked the court to continue his DOSA. Mr. Olson explained he wanted to participate in treatment and had cut things off with M.P. He asked for a "second chance." 1 Rep. of Proc. (RP) (May 20, 2022) at 104. The State objected to a second DOSA, but the court decided it would award a DOSA and give Mr. Olson "one last chance." *Id*. at 110. The court's DOSA order specified Mr. Olson was to be held in custody until he could be released to a residential treatment facility.

Mr. Olson secured an inpatient bed with a start date of June 13, 2022. The treatment facility was located outside of the county, so a bus ticket was procured to facilitate travel. At a hearing on June 10, Mr. Olson asked to be released before June 13 so he could go home and pack up his things. Mr. Olson said his brother would help take him to the bus. The court gave Mr. Olson the benefit of the doubt and ordered his release on June 12 with the requirement that he report for inpatient treatment on June 13.

Mr. Olson did not report for treatment on June 13 as required. According to Mr. Olson, his brother drove him to the bus stop, but he missed the bus by about 10 minutes. Mr. Olson tried contacting his attorney, but his attorney's office was not yet open. He then tried to turn himself in at the jail, but the jail would not admit him because there was no court order remanding him to custody.

After unsuccessfully trying to turn himself in, Mr. Olson apparently relapsed. Mr. Olson's attorney worked with the prosecutor's office to arrange for a remand order, but Mr. Olson never turned himself into the jail. A warrant was issued based on Mr. Olson's DOSA violations and on July 19, 2022, Mr. Olson was arrested. At the time of his arrest, Mr. Olson was inside of M.P.'s apartment in violation of his outstanding domestic violence protection order.

Mr. Olson was brought before the court for a preliminary hearing on July 20, 2022. Mr. Olson appeared via video conferencing from the jail, but his attorney was not present. The court advised Mr. Olson of the reasons for his arrest and informed him of his rights.

During the July 20 hearing, the court addressed the topic of bail. The State requested bail be set at a $75,000 bond or $7,500 cash. When provided an opportunity to speak, Mr. Olson stated he was "not even going to ask for release." 1 RP (Jul. 20, 2022) at 128. He told the court about missing the bus and explained his brother could vouch for

him because "he [was] the one who drove me." *Id*. Mr. Olson said he went to M.P.'s

apartment because he needed help and did not know where to go after wandering around

in the sun for hours, disoriented. He testified to being very sick and disoriented. The court

imposed bail consistent with the State's recommendation.

The State charged Mr. Olson with a new protection order violation. It also moved

to revoke both his DOSAs. Mr. Olson was arraigned on the new protection order violation

on July 22, 2022. Mr. Olson's attorney was present for the arraignment hearing.

At the revocation hearing, Mr. Olson asked to be given "one final chance" at a

DOSA. 1 RP (Aug. 19, 2022) at 154. Mr. Olson again explained how he missed the bus

on June 13 and subsequently relapsed. Mr. Olson stated he was working on turning

himself in, and even had a ride to turn himself in, but then was arrested.

The State urged the court to revoke the DOSAs and pointed out the court had

already given Mr. Olson a second chance. The State also took issue with some of

Mr. Olson's prior statements to the court. The State argued Mr. Olson could have turned

himself to the jail once a remand order was issued, but he did not do so. The State also

argued that Mr. Olson's statements regarding having a ride to turn himself in was "not

what [Mr. Olson] said at his first appearance [on July 20]." *Id*. at 156. According to the

State, Mr. Olson's statement at his initial appearance was that he "had no ride, he had nowhere to go." *Id*.

The court decided to revoke Mr. Olson's DOSAs. In so doing, the court focused on the colloquy it had with Mr. Olson at the time it imposed the most recent DOSA. The court explained it had made a "clear-cut statement to Mr. Olson" that "[t]his is your last chance on that second DOSA." *Id*. at 161. The court found compelling evidence to revoke the DOSAs and impose a standard range sentence.

Mr. Olson received a total sentence of 25.5 months' imprisonment as a result of the DOSA revocations. The most recent protection order violation charge was voluntarily dismissed. Mr. Olson separately appealed from the court orders revoking his residential DOSA. We have consolidated those appeals for review.

ANALYSIS

Mr. Olson argues that the DOSA revocations must be reversed because he was denied his constitutional right to counsel at his July 20, 2022, hearing. Mr. Olson had counsel present at all his other hearings. But he argues the July 20 hearing was a critical stage of his criminal prosecution and, as such, denial of the right to counsel constituted structural error requiring reversal.

The briefing in this case was submitted prior to our Supreme Court's decisions in *State v. Charlton*, 2 Wn.3d 421, 538 P.3d 1289 (2023), and *State v. Heng*, 2 Wn.3d 384, 539 P.3d 13 (2023). After the close of briefing, we stayed this appeal pending the Supreme Court's disposition in *Charlton*. *Charlton* and *Heng* were decided on December 7, 2023, and mandates were issued on January 18, 2024. We have therefore lifted the stay and now decide Mr. Olson's case on the merits.

As recognized in *Charlton* and *Heng*, the right to counsel is guaranteed by the federal and state constitutions and by court rule. *See* U.S. Const. amend. VI; Wash. Const. art. I, § 22; CrR 3.1(b)(1). If counsel is denied during a critical stage of a criminal prosecution, structural error will apply requiring automatic reversal. *Charlton*, 2 Wn.3d at 427; *Heng*, 2 Wn.3d at 392. But "not all pretrial stages are necessarily critical." *Charlton*, 2 Wn.3d at 427. Instead, we assess "whether the accused's rights were lost, defenses were waived, privileges were claimed or waived, or the outcome of the case was otherwise substantially affected." *Id*.

The July 20, 2022, hearing was not a critical stage of the prosecution of Mr. Olson. At the hearing, Mr. Olson did not lose any rights. Nor did he waive any defenses or privileges. Although the court set bail at the hearing, Mr. Olson did not lose any future right to challenge the bail decision. While Mr. Olson should have been provided counsel

at the July 20 hearing, the Supreme Court's recent cases in *Charlton* and *Heng* make clear that this hearing was not a critical stage of the prosecution. *See Charlton*, 2 Wn.3d at 427-28; *Heng*, 2 Wn.3d at 394-95.

When a defendant is denied the right to counsel at a noncritical stage of a prosecution, relief turns on a constitutional harmless error analysis. *Charlton*, 2 Wn.3d at 428-29. Under this standard, reversal is required unless the State shows, beyond a reasonable doubt, that the error did not impact the disposition of the case. *Id*.

The failure to provide counsel at the July 20 hearing was harmless beyond a reasonable doubt. While the presence of counsel at the July 20 hearing might have helped Mr. Olson argue for a lower bail, the existence of bail did not impact the final outcome of his case. Mr. Olson argues that had counsel been present, he likely would not have made statements that were used against him at his later DOSA revocation hearing. But even if that were true, Mr. Olson's statements "were only a small part of the evidence against him." *Heng*, 2 Wn.3d at 397. The main reason Mr. Olson's DOSA sentences were revoked was that he had already been given a second and final chance at a DOSA. There is no reason to believe the outcome of Mr. Olson's case would have been different if counsel would have been present on July 20.

CONCLUSION

Mr. Olson should have been provided counsel at his July 20, 2022, hearing. Nevertheless, the hearing did not constitute a critical stage of the prosecution and the absence of counsel was harmless beyond a reasonable doubt. The orders on appeal are therefore affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.

8